IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| **KENNETH G. DAVIS,**        ) | |
|        **Plaintiff,**        ) | |
|        ) | |
| **v.**        ) | **CIVIL ACTION NO. 5:11-00408** |
|        ) | |
| **MICHAEL J. ASTRUE,**        ) | |
| **Commissioner of Social Security,**        ) | |
|        **Defendant.**        ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered June 9, 2011 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 13.), Plaintiff's Motion for Remand for Consideration of New and Material Evidence (Document No. 11.), and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Kenneth G. Davis (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on December 15, 2008 (protective filing date), alleging disability as of January 1, 2006, due to back and knee problems and being unable to read or write well.[1] (Tr. at 14, 133-36, 137-40, 159, 163.) The claims were denied initially and upon reconsideration. (Tr. at 65-67, 72-74, 75-77.) On October 30, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 78-79.) A hearing was held on September 10, 2010, before the Honorable Michelle Wolfe. (Tr. at 27-60.) By decision

---

[1] On his form Disability Report - Appeal, Claimant alleged nerve damage of the right elbow and wrist, a knot on the right shoulder, chronic back pain, and breathing problems, as additional disabling impairments. (Tr. at 200.)

dated September 17, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-26.) The ALJ's decision became the final decision of the Commissioner on April 11, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on June 9, 2011, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is

    incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

    At the administrative law judge hearing and the Appeals Council levels, the written

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2006. (Tr. at 16, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, chronic obstructive pulmonary disease, dysphagia and vocal c[h]ord polyps, and degenerative disc disease of the lumbar spine." (Tr. at 16, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform sedentary level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He should avoid even moderate exposure to temperature extremes, wetness, humidity, fumes, odors, gases, dust, poor ventilation, vibrations, and hazards. Additionally, as a result of the claimant's education level and difficulty with reading, the undersigned notes that he is limited to unskilled work.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 24, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a hand assembler, bench level; hand packer; and shipping and receiving position, at the sedentary level of exertion. (Tr. at 25, Finding No. 10.) On this basis, benefits were denied. (Tr. at 26, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the

claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 23, 1961, and was 49 years old at the time of the supplemental administrative hearing, September 10, 2010. (Tr. at 24, 133, 137.) The ALJ found that Claimant had a 7th grade, or limited education and was able to communicate in English. (Tr. at 24, 33, 167.) In the past, he worked as a construction laborer, a laborer, and a cable lining worker. (Tr. at 24, 34-35, 53-54, 163-65, 167.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes it herein in relation to Claimant's arguments.

On February 9, 2009, Judith L. Lucas, M.A., conducted a psychological evaluation of Claimant. (Tr. at 400-05.) Claimant reported difficulty reading and spelling, and reported an eighth grade education. (Tr. at 400.) He also reported feelings of depression which he usually was able to "shake off,"

6

difficulty sleeping due to pain and needing to go to the bathroom, and feeling angered easily. (Id.) Ms. Lucas noted that Claimant had neither been hospitalized nor involved in counseling due to any mental impairments. (Id.) Ms. Lucas noted Claimant's reports that he quit school when he was 16 and in the eighth grade and went to work. (Id. at 401.) Claimant stated that he was retained in the seventh grade, had difficulty reading and spelling, got along well with other students, tended to be a loner, and did not participate in either school activities or special education classes. (Id.)

On mental status exam, Ms. Lucas observed that Claimant was cooperative, related appropriately with the examiner, and exhibited relevant and coherent speech, as well as logical and organized thought processes. (Id. at 402.) He had no disturbance in mood, was oriented in all spheres, and had a broad affect. (Id.) Claimant had fair insight, mildly deficient judgment, moderately deficient recent memory, fair remote memory, and normal immediate memory. (Id.) Scores on the WAIS-III revealed a verbal IQ of 77, a performance IQ of 94, and a full scale IQ of 84. (Id.) Ms. Lucas noted that Claimant put forth good effort and that the scores were valid. (Id.) Results of the WRAT-4 demonstrated that Claimant read at a 2.1 grade level, performed sentence comprehension at a 3.5 grade level, and performed arithmetic at a 4.9 grade level. (Id.) Ms. Lucas acknowledged Claimant's alleged difficulty reading and noted that there was "much scatter" on the sentence comprehension section. (Id. at 403.) His difficulties on testing however, were on the earliest levels of sentence comprehension and he was successful on the last section. (Id.) Ms. Lucas therefore, opined that the sentence comprehension scores may have been a low estimate. (Id.) Likewise, she noted that Claimant missed some easy items but was successful on the more difficult ones, thereby leading her to conclude that Claimant's math computation also was a low estimate. (Id.)

Ms. Lucas diagnosed depressive disorder NOS and cannabis abuse. (Id. at 403.) She opined that Claimant's social functioning, persistence, and pace were within normal limits. (Id.) Ms. Lucas also opined that Claimant's math skills were adequate and that he was able to manage his financial affairs. (Tr. at 404.) Ms. Lucas noted Claimant's daily activities to have included watching television most of the time and occasionally visiting friends. (Tr. at 403.) Claimant enjoyed deer hunting but required the

assistance of a friend in moving the deer once he shot it. (Id.) Claimant reported that he neither shopped nor did chores, and was unable to stand long enough even to make a sandwich. (Id.)

On February 13, 2009, Dr. Paula J. Bickham, Ph.D., completed a form Psychiatric Review Technique ("PRT") on which she opined that Claimant's depression was not a severe impairment. (Tr. at 406-13.) Dr. Bickham also noted that Claimant suffered from cannabis abuse. (Tr. at 414.) She concluded that Claimant's depression resulted in no more than mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. at 416.) There were no episodes of decompensation of extended duration. (Id.) Dr. Debra Lilly, Ph.D., affirmed Dr. Bickham's PRT on September 5, 2009. (Tr. at 472.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in relying on the testimony of a vocational expert that there were jobs that required a sixth or seventh grade reading ability that Claimant could perform. (Document No. 10 at 1-2, 10-15.) Claimant asserts that the vocational expert was not advised adequately regarding his reading ability and mental capacity. (Tr. at 12.) He further asserts that the ALJ failed to address Claimant's credibility as to the assertion that he was illiterate; to make any findings regarding Claimants reading ability, despite testing that showed he read at a second or third grade level; to assign an educational level supported by the record; and to include limitations from Claimant's depression in his RFC assessment or hypothetical question to the vocational expert. (Tr. at 13-14.) Claimant contends that his education was marginal, not limited, and that the ALJ should have developed the record to determine whether a diagnosis of borderline intellectual functioning was warranted.. (Tr. at 14) Finally, Claimant contends that pursuant to Social Security Ruling 96-8p, the ALJ should have considered the limitations resulting from his depression and possible learning disorder. (Tr. at 14-15.)

In response, the Commissioner asserts that Claimant has failed to demonstrate how his

impairments prevented him from performing the jobs identified by the vocational expert. (Document No. 13 at 8.) Specifically, the Commissioner asserts that Claimant was able to perform unskilled work as the ALJ found. (Id. at 8-18.) In so arguing, the Commissioner points out that unskilled work did not require a high degree of mental capacity, that Claimant never required mental health treatment, and that Claimant had no significant limitations resulting from a mental impairment. (Id. at 10-11.) Furthermore, the Commissioner notes that the state agency reviewing medical sources opined that Claimant's mental impairment was non-severe and that Claimant had past semi-skilled work experience. (Id. at 11-13.) The Commissioner also asserts that Claimant's alleged learning disorder did not prevent him from performing unskilled work because he failed to demonstrate any limitations resulting therefrom. (Id. at 13-15.) Finally, citing 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3), the Commissioner asserts that the ALJ's "limited education" finding was supported by the evidence of record, including Claimant's education, his not having taken special education classes, and his past semi-skilled work. (Id. at 16-18.) In reply, Claimant asserts that the primary issue in this appeal is not whether he received treatment for his depression but whether the ALJ met his burden at step five of the sequential analysis. (Document No. 14 at 1.) Claimant contends that the Commissioner relied on vocational testimony which identified jobs that required a sixth or seventh grade reading ability, when psychometric testing demonstrated that he read at a 2.1 grade level and comprehended sentences at a 3.5 grade level. (Id. at 1-2.) Consequently, the evidence did not show that Claimant read at a sixth or seventh grade level. (Id. at 2.)

      Claimant next asserts that the Commissioner's reliance on a footnote in Craig v. Chater, 76 F.3d 585, 596 n. 7 (4th Cir. 1996), to argue that Claimant's prior semi-skilled work experience lends support to the ALJ's finding of a limited education, is misplaced. (Id. at 2.) Claimant contends that the Commissioner's argument ignores the ALJ's finding that Claimant cannot perform his past relevant work due to his physical impairments. (Id.) Consequently, Claimant contends that the ALJ failed to

9

demonstrate that there were sedentary exertional jobs that Claimant could perform given his alleged education and reading problems. (Id. at 2-3.)

Claimant also filed a Motion for Remand for Consideration of New and Material Evidence, to which he attached a copy of his school records from Marion County, West Virginia. (Document No. 11.) In the supporting Memorandum, Claimant asserts that the school records show that he was in the seventh grade for three years and dropped out of school in the eighth grade, and therefore, that he had less than a limited education. (Document No. 12 at 1.) Claimant asserts that this evidence is new because it represents the extent of Claimant's formal schooling, which previously was not made a part of the record. (Id. at 2.) Next, Claimant asserts that the evidence is material because it could change the ALJ's decision given that the only evidence of record of jobs that he could do given his physical limitations to sedentary exertion required a sixth or seventh grade reading level. (Id.) Third, Claimant contends that good cause existed for his failure to submit the records prior to the conclusion of the administrative proceedings because he was represented by another attorney. (Id. at 2-3.) Finally, Claimant asserts that he made a general showing of the nature of the evidence. (Id. at 3.) Accordingly, Claimant seeks an Order remanding this matter to the Commissioner for further proceedings to consider Claimant's school records. (Id.)

In response, the Commissioner first asserts that the evidence is not new because it was in existence 23 years prior to the ALJ's decision. (Document No. 13 at 18-19.) Second, the Commissioner contends that the evidence is not material because it fails to establish that Claimant was unable to perform unskilled work. (Id. at 19.) The Commissioner asserts that even if Claimant had a marginal education as Claimant asserts, the evidence fails to establish that he could not perform unskilled work primarily because of his past relevant work experience. (Id.) Third, and finally, the Commissioner asserts that Claimant failed to establish good cause because he was represented by counsel during the

10

administrative proceedings. (Id. at 19-20.) Accordingly, the Commissioner contends that because Claimant failed to show that the evidence was new and material, or that good cause existed for not submitting the evidence at the administrative proceedings, Claimant's Motion must be denied. (Id. at 20-21.)

Analysis.

Claimant essentially argues that the ALJ erred at step five of the sequential analysis by finding that Claimant had a limited, rather than a marginal education, and that he could read and write at a sixth and seventh grade level.

The Regulations state that an individual's education level will generally be classified as his years of formal schooling, unless there is contradictory evidence. See 20 C.F.R. §§ 404.1564(b), 416.963(b) (2010); See also, Walston v. Sullivan, 956 F.2d 768 (8th Cir. 1992)("A claimant's formal education is conclusive proof of his educational abilities under the regulations only if no evidence is presented to contradict it."). A limited education is defined under the Regulations as the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2010).[3] A seventh grade through eleventh grade level of formal education is generally considered a limited education. Id. Conversely, a marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. §§ 404.1564(b)(2), 416.965(b)(2) (2010).[4] Formal schooling at a sixth grade level or less is

---

[3] The Regulations provide that a limited education "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R.§§ 404.1564(a)(3), 416.964(a)(3) (2010)

[4] A marginal education is defined as the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R.§§ 404.1564(a)(2), 416.964(a)(2) (2010)

11

generally considered a marginal education. Id.

Claimant testified that he completed the seventh grade, after having been retained, and dropped out of school in the eighth grade, at the age of 16, when he started working. (Tr. at 33, 162, 180, 182, 401.) Claimant's formal education therefore, suggests a limited education, as determined by the ALJ. See 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2010). Claimant, however, also testified that he was illiterate,[5] which he said meant that he could neither read nor spell very well. (Tr. at 33.) When in school, he did not participate in any special education classes and failed to obtain his Generalized Equivalency Degree or obtain vocational or job training. (Id.) Claimant stated that he was able to read the forms associated with his claim, but had a friend help him fill them out by reading the forms to him. (Tr. at 34.) He obtained his driver's license by oral and driving examinations and he reported problems reading menus and identifying small words in the newspaper, but he was able to do simple math, such as adding and subtracting, rather well. (Id.) Additionally, Claimant indicated on his form Disability Report - Adult that he could read only a limited amount and could not spell. (Tr. at 162, 168.) On a Function Report dated January 15, 2009, Claimant again reported that he was illiterate and could not read well enough to follow instructions. (Tr. at 180, 182.) This form also was completed by a friend. (Tr. at 184.)

Notwithstanding Claimant's years of formal education, Claimant was employed gainfully for a number of years as a construction laborer, a laborer, and a cable lining worker. (Tr. at 24, 53-54.) The vocational expert testified that the laborer and cable lining worker jobs required a Specific Vocational

---

[5] The Regulations define illiteracy as the "inability to read or write." See 20 C.F.R.§§ 404.1564(a)(1), 416.964(a)(1) (2010). A claimant is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Id.

Preparation of 3, which classified them as semi-skilled work.[6] (Tr. at 54.) The ALJ determined that Claimant was unable to perform his past relevant work due to his physical impairments, not his mental impairments. (Tr. at 20, 24.) Claimant's prior relevant work at the semi-skilled level, therefore, suggests that Claimant may have developed intellectual abilities during the course of his prior employment, which were greater than his formal education and that allowed for greater than unskilled level work. See 20 C.F.R. §§ 404.1564(a), 416.964(a) (2010) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education."). Nevertheless, the ALJ has limited Claimant to performing unskilled work[7] due to his educational level and difficulty with reading. (Tr. at 20, 24.)

Psychometric testing, administered by Ms. Lucas, demonstrated that Claimant performed word reading at a second grade level (grade equivalent of 2.1) and comprehended sentences at a third grade

---

[6] The Regulations provide:

> Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. §§ 404.1568(c), 416.968(c) (2010).

[7] Unskilled work is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a), 416.968(a) (2010).

13

level (grade equivalent of 3.5). (Tr. at 402.) Ms. Lucas found that the sentence comprehension subtest score may have been a low estimate however, based on Claimant's "scatter" during the test, meaning that he had difficulty with the earlier items on the test but was more successful on the latter items. (Tr. at 403.) Ms. Lucas also administered IQ testing, which revealed a verbal IQ of 77, a performance IQ of 94, and a full scale IQ of 84. (Id.) The verbal and full scale IQ scores alone were suggestive of borderline intellectual functioning, though Claimant never received a formal diagnosis. See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 684 (4th ed. 1994) ("This category can be used when the focus of clinical attention is associated with borderline intellectual functioning, that is, an IQ in the 71-84 range.") A second grade reading level, however, does not correlate with the required sixth or seventh grade reading level for the jobs identified by the vocational expert. (Tr. at 58.) The vocational expert stressed that the educational level was "most significant." (Id.)

An examination of Claimant's school records, which were attached to Claimant's Motion for Remand, reveals that Claimant did not achieve passing grades in any academic subject in the seventh grade,[8] though he repeated the grade three times and nevertheless was promoted to the eighth grade. (Document No. 11 at Exhibit 1.) Claimant's school records therefore, suggest that he does not have a limited education as determined by the ALJ. Rather, Claimant's formal education, which appears to have been at the sixth grade level and not the seventh grade, suggests a marginal education. The record is void of evidence regarding Claimant's elementary school grades. Claimant urges the Court to remand the matter for further consideration of the school records.

In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without

---

[8] Claimant received the letter grade "E" in all academic subjects with the exception of a "D" in geography and health for one semester. (Document No. 11 at Exhibit 1 sat 2.) Presumably, an "E" grade means that the class was not passed because Claimant received no credits for such grades. (*Id.*)

14

remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[9] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim

---

[9] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders*' construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. Id.

With regard to the new evidence submitted, the Claimant has not satisfied all four factors of Borders, and therefore, remand on the basis of new evidence is inappropriate. Claimant submitted to the Court school records from Marion County, West Virginia, from 1973 through 1977. (Document No. 11, Exhibit 1.) The school records indicate that Claimant repeated the seventh grade three times, from 1973 through 1976, and dropped out of school during the 1976 through 1977 school year, when he was in the eighth grade. (Id.)

Under the Borders analysis, the undersigned first finds that the evidence is relevant to the determination at the time the application was first filed. Although the school records pre-date the ALJ's decision by some 23 years, the record before the ALJ lacked any evidence of the actual grades Claimant received or the number of times he repeated the seventh grade.

Under the second step of the Borders analysis, the undersigned finds that the evidence is material because Claimant's educational level was pertinent to consideration of his ability to perform work at step five of the sequential analysis. Though it appears that, if the ALJ had Claimant's educational records before her, she would have found that Claimant had a marginal education rather than a limited education, the undersigned finds that it is unlikely that her decision in this respect would have changed her conclusion in view of Claimant's semi-skilled work history. Claimant does not therefore meet the second step of the Borders analysis.

Claimant also does not meet the third step in the Borders analysis. The undersigned finds that there was not good cause for the Claimant's failure to submit the school records evidence. The school records are dated October, 1978, and could easily have been made part of the record at the administrative level. Citing Brock v. Secretary of Health & Human Serv., 807 F.Supp. 1248, 1251 (S.D. W.Va. 1992), Claimant asserts that his change in counsel from the administrative proceedings to the present appeal is one factor weighing in his favor to finding good cause. (Document no. 12 at 2-3.) Claimant asserts that

16

his attorney at the administrative proceedings had not handled a social security claim "for a while," and therefore, remand is required because the records submitted by his new attorney, "contradict to some degree [his] remembrance regarding his educational background and further corroborate that [he] does not have a sixth or seventh grade reading level." (Id. at 3.)

In Brock, the claimant retained new counsel and obtained a Medicaid card as an indigent disabled person subsequent to the ALJ's decision denying him benefits. Id. at 1250. Thereafter, the claimant underwent physical and psychological evaluations. Id. The physical evaluation report consisted of a possible diagnosis and the examiner's assessed limitations resulting from his impairment. Id. The psychological evaluation report contained evidence of a possible new mental impairment, together with the examiner's assessed functional limitations. Id. This Court found good cause for failing to submit the reports based on the claimant's lack of continuity in medical care and legal representation in part due to financial conditions, the evidence of a mental impairment not in existence at the time of the ALJ's decision, and the fact that the claimant immediately sought more evidence of his disability after retaining new counsel. Id. at 1251.

The undersigned finds that the facts and circumstances in the present case are distinguishable from the facts in Brock. In the present case, Claimant retained new counsel subsequent to the ALJ and Appeals Council decisions. The new evidence consists of school records, which were in existence prior to the administrative proceedings. There neither is anything in the record to suggest, nor does Claimant allege that he was unable to obtain these school records due to any financial conditions. Furthermore, the school records do not establish any new impairment. Rather, the school records lend support to Claimant's argument that he has a marginal, as opposed to limited, education. Claimant's medical care was continuous and there is no indication that it was limited due to his financial condition. Although Claimant's counsel at the administrative level had not handled such a case in a while, he had the opportunity to produce the school records either to the ALJ or to the Appeals Council. The Appeals Council granted a twenty-five day extension to his former attorney to submit more evidence or a

17

statement about the facts and law in the case. (Tr. at 5-7.) He could have submitted the school records during that time period, but did not. Accordingly, the undersigned finds that Claimant's change in counsel does not establish good cause for his failure to submit the school record evidence.

Finally, Borders requires that the Claimant present at least a general showing of the new evidence to the Court. Claimant has attached the new evidence as an exhibit to Motion for Remand, for the Court's review.

The Claimant has failed to satisfy all four factors of Borders and, therefore, remand would be inappropriate; the psychological evaluation evidence submitted to the Court does not provide a basis for changing the ALJ's decision and does not warrant a remand and Claimant has not established good cause for his failure to submit the school records at the administrative level.

The undersigned finds that the Commissioner's decision is supported by substantial evidence. The new school records submitted by Claimant suggests that based solely on the grade level completed, he has a marginal education as opposed to the limited education as determined by the ALJ. Nevertheless, Claimant acknowledges that he can read and write a little, and therefore, is not illiterate as he seems to allege. Furthermore, despite his allegations of being able to read and write only a little, his formal educational level, and the results of psychometric testing, Claimant performed semi-skilled work for at least eight years preceding the filing of his application. The record does not identify any learning disorder or cognitive impairment that arose after he quit working. His past work, therefore, contained educational and mental demands more stringent than the skill level which the ALJ has limited him to performing. The ALJ limited him to unskilled work and the evidence does not give any reason to find that Claimant cannot now perform work at a lesser level.[10] The vocational expert testified that a sixth grade education,

---

[10] The undersigned notes that the *Dictionary of Occupational Titles* ("*DOT*") provides that § 821.281-010 for a cable television installer requires math skills at level 4 and language skills at level 3, and § 821.261-010 for a cable television line technician requires math skills at level 3 and language skills at level 3. U.S. Department of Labor, *Dictionary of Occupational Titles* (*DOT*) §§ 821.2610919, 821.281-010 (4th ed. 1991). Level 3 Language Development requires the ability to

which Claimant possesses, was sufficient to perform the jobs identified. The ALJ could have developed the record more fully regarding his educational level and ability to read and write, but the record before her was sufficient to make a determination on those factors. The record also fails to establish any significant limitations resulting from Claimant's depression and cannabis abuse, as diagnosed by Ms. Lucas. Accordingly, the undersigned finds that the ALJ's decision is supported by substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.) and Motion for Remand for Consideration of New and Material Evidence (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and

---

read "a variety of novels, magazines, atlases, and encyclopedias," as well as "safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work." *Id.* at Appendix C. It also requires the ability to "write reports and essays with proper format, punctuation, spelling, and grammar using all parts of speech." *Id.* Conversely, as an example of the jobs identified by the vocational expert, § 222.587-038 of a router requires a less language level of 2 and § 920.587-018 of hand packager requires an even lesser language level of 1. U.S. Department of Labor, *Dictionary of Occupational Titles* (*DOT*) §§ 222.587-038, 920.587-018 (4th ed. 1991).

Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 9, 2012.

R. Clarke VanDervort
United States Magistrate Judge